UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
VICTOR OYEBADE                                             16-cv-4658

                          Plaintiff,                         **COMPLAINT**

    -against-                                              **JURY DEMAND**

CITY OF NEW YORK,
DETECTIVE ANTHONY PAGNOTTA
AND DETECTIVE ANDRE PARKER,

                         Defendants.
-------------------------------------------------------x

      Plaintiff, by his attorney, Law Office of Philip Akakwam, P.C., complaining of the defendants City of New York, Detective Anthony Pagnotta and Detective Andre Parker (collectively "defendants"), upon information and belief alleges as follows:

## INTRODUCTION

      1. This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. §§ 1983 and 1985 (3), and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and the laws and statutes of the City and State of New York. This case arose from an incident which occurred on or about March 29, 2016 during which members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things, unlawful search, false arrest, assault, abuse of process and harassment.

      2. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorneys fees and such other and further relief as the Court deems just and proper.

## JURISDICTION

      3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section

1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to 28 U.S.C. § 1367, entitled Supplemental Pendent Party Jurisdiction. Plaintiff requests that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff, a black male, is a resident of Brooklyn Kings County, State of New York.

7. Defendant City of New York is a municipal entity existing under the laws and Constitution of the State of New York and was the public employer of the defendant officers through its Police Department and the actions of the officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

8. Upon information and belief, defendants Detective Anthony Pagnotta and Detective Andre Parker were police officers employed by the defendant City of New York. Said defendants were acting as agents, servants and/or employees of the City of New York and within the course and scope of their employment with the City of New York as police officers.

9. At all times herein mentioned, the defendants officers acted under color of law to deprive plaintiff of his Constitutional rights as set forth more fully below.

10. Plaintiff is suing the defendant officers in their individual and official capacities.

## NOTICE OF CLAIM

11. Plaintiff, in furtherance of his state causes of action, filed timely notice of claim against the City, in compliance with General Municipal Law Section 50.

12. More than 30 days have elapsed since service of said notice, and the City has failed to

pay or adjust the claim.

**STATEMENT OF FACTS**

13. On or about March 29, 2016, at about 7:20 a.m., plaintiff (who was then 17 years old) was sleeping inside the apartment he occupies with his family located at 455 Carlton Avenue, #13F, Brooklyn, NY 11238 when two police officers came and knocked on the door.

14. When plaintiff's father Josiah Oyebade answered the door, the officers told him that they were looking for Victor. He asked them why they were looking for his son Victor and the officers said they did not have to tell him why they were looking for his son.

15. Without the consent of plaintiff's father, the officers entered the apartment and demanded to see Victor (Plaintiff). Mr. Josiah Oyebade called for plaintiff who was then still in bed in his room.

16. When plaintiff came out of his bedroom, the officers showed him a photograph, told him that he was the one in the photograph and that he was a robbery suspect.

17. Plaintiff advised the officers that he was not the one in the photograph and that he was not involved in any robberies. Plaintiff's father also told them that the person in the photo was not his son Victor.

18. The officers told plaintiff that they also had videos of him taking part in four different robberies.

19. Notwithstanding that plaintiff and his father Josiah told the officers that plaintiff was not the person in the photograph, the officers proceeded to arrest plaintiff.

20. They placed him in handcuffs and walked him through the hallways of his building to the police vehicle. Many of plaintiff's friends and neighbors saw him being led to the police

vehicle in handcuffs.

21. Thereafter, plaintiff was transported to the 88th precinct. At the precinct, he was subjected to intense interrogation and intimidation to get him to confess to robberies he knew nothing about.

22. Without a lawyer and/or his parents present, plaintiff (then an infant) was aggressively interrogated by the defendant officers. They told him that they knew he and some other persons were involved in about four different robberies and that they wanted him to tell them about the robberies.

23. When plaintiff told them that he had no knowledge of what they were talking about, defendant Detective Parker threatened to hit plaintiff if he again denied knowledge of the robberies. He also threatened to have plaintiff transferred to Rikers Island for detention if he did not confess to the robberies.

24. The officers showed plaintiff more photos of the alleged robbery suspect who they were claiming to be him, and again he told them that the person in the photos was not him.

25. Defendant officers threw plaintiff into a cell and after about an hour, they brought him out and subjected him to further interrogation. Then they threw him back into a holding cell with other criminal suspects.

26. Plaintiff's father went to the precinct to ask about his son and was told by defendant officers that they would release him soon.

27. After plaintiff had been in detention for several hours, his friend Victor Weir who was also being sought for the alleged robberies came to the precinct with his sister when he learned that the officers had been to his house to arrest him.

28. Mr. Weir advised the officers that he and plaintiff were not involved in any robberies. And Mr. Weir's sister showed the officers some photos of Victor Weir and plaintiff and told them that they had the wrong people.

29. Thereafter, the officers told plaintiff that they would release him but that he had to first review videos of the robberies to determine if he could identify the suspects. Plaintiff was made to review the videos with his friend Victor Weir at the precinct.

30. After reviewing the videos, plaintiff told the officers that he did not know anybody on the videos. Then the officers released plaintiff without any charges.

31. Plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, loss of liberty, psychological trauma, and damage to reputation as a result of the defendants' unlawful conduct alleged herein. In addition, plaintiff suffered pain in the wrists from being placed in tight handcuffs.

32. And as a result of the unlawful conduct of defendants alleged herein, plaintiff was unable to attend school on the date of the incident.

33. Plaintiff suffered violations of his federally guaranteed constitutional and civil rights including rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

34. Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

35. Plaintiff has no other adequate remedy at law but for this action.

## AND AS FOR A FIRST CAUSE OF ACTION:
## 42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT

36. Plaintiff reiterates paragraphs 1 through 35 and incorporates such by reference herein.

37. By their conduct and under color of law, defendant officers deprived plaintiff of his constitutional right to be free from false arrest and false imprisonment.

38. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A SECOND CAUSE OF ACTION

**(Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)**

39. Plaintiff reiterates paragraphs 1 through 38 and incorporates such by reference herein.

40. The foregoing violations of plaintiff's federal constitutional rights and resultant injuries were directly and proximately caused by conduct, chargeable to defendant City, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

41. The defendant City, through its police department, the NYPD, has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff's rights.

42. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they

6

were involved in some illicit activities.

43. Defendant City failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

    (a)    The determination of probable cause to make an arrest;

    (b)    The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

    (c)    The circumstances under which investigative detentions may lawfully occur and the manner in which they may lawfully be executed;

    (d)    The very limited circumstances under which a warrantless search may be carried out, and in particular, the warrantless search of a person's home.

44. The existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

45. Officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

46. As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause.

47. As part of its policies, customs and practices, Defendant City has failed to take proper corrective and punitive actions against overreaching police officers thus creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

48. Prior to and at the time of the incident alleged herein, the defendant City was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers engaged in racial profiling, and was deliberately indifferent to that need.

49. As a direct and proximate result of the City's policies and deliberate indifference, defendants violated plaintiff's constitutional rights causing plaintiff to suffer substantial damages.

### AND AS FOR A THIRD CAUSE OF ACTION: PENDENT CLAIM OF ASSAULT AND BATTERY

50. Plaintiff reiterates paragraphs 1 through 49 and incorporates such by reference herein.

51. The conduct of defendant officers, as described herein, amounted to assault and battery on the plaintiff. The assault and battery was willful, unlawful, unwarranted, and intentional. Plaintiff was threatened with physical harm if he did not confess to a crime he did not commit.

52. By reason of and as a consequence of the assault, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

53. Upon information and belief, defendant City had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

54. By reason of and as a consequence of the assault detailed above, plaintiff suffered severe and serious physical and mental injuries.

## AND AS FOR A FOURTH CAUSE OF ACTION:
## PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT

55. Plaintiff reiterates paragraphs 1 through 54 and incorporates such by reference herein.

56. Plaintiff was wrongfully, unlawfully and unjustifiably arrested, detained and deprived of his liberty against his will, and was imprisoned by defendant officers.

57. At all relevant times, the defendant officers acted forcibly in apprehending plaintiff.

58. The false and unlawful arrest and imprisonment of plaintiff was without any justification or probable cause, and was forcible and against his will.

59. All of the foregoing occurred without any fault or provocation on the part of plaintiff.

60. At all relevant times, the defendant officers were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

61. As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR AN FIFTH CAUSE OF ACTION
## ARTICLE 1, SECTION 12 OF NEW YORK STATE CONSTITUTION

62. Plaintiff reiterates paragraphs 1 through 61 and incorporates such by reference herein.

63. By arresting, detaining and imprisoning plaintiff, without justification, probable cause or reasonable suspicion, the Defendant Officers, deprived plaintiff of rights, remedies, privileges and immunities guaranteed to every New Yorker by Article 1, Section 12 of the New York State Constitution.

64. The Defendant Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD

Officers. Such acts by Defendant Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive the plaintiff of his constitutional rights secured by Article 1, Section 12 of the New York State Constitution.

65. Defendants, their officers, attorneys, agents, servants and employees were responsible for deprivation of Plaintiff's State Constitutional rights. Defendant City, as employer of each of the defendant officers, is responsible for their wrongdoing under the common law doctrine of *respondeat superior.*

66. As a direct and proximate result of the conduct of defendant officers as set forth above, plaintiff sustained the damage herein before stated.

**WHEREFORE**, plaintiff demands judgment against the defendants as follows:

i. For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii. For punitive damages against the individual defendants in an amount to be determined at trial;

iii. For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv. For pre-judgment interest as allowed by law; and

v. For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
      August 19, 2016

                                    LAW OFFICE OF PHILIP AKAKWAM, P.C.

                                    By:          /s/
                                            Philip Akakwam, Esq.
                                            Attorneys for the Plaintiff
                                            303 Livingston Street, 2nd Floor
                                            Brooklyn, N.Y. 11217
                                            (718) 858-2488

16-cv-4658

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

VICTOR OYEBADE

                              Plaintiff

    -against-

CITY OF NEW YORK,
DETECTIVE ANTHONY PAGNOTTA
AND DETECTIVE ANDRE PARKER,

                            Defendants.

---

# COMPLAINT

---

LAW OFFICES OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiff
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488

---

TO:

---

Service of a copy of the within is hereby admitted.

Dated: